James A. Dumas, Jr. (SBN 76284)
Christian T. Kim (SBN 231017)
DUMAS & KIM, APC
915 Wilshire Boulevard, Suite 1775
Los Angeles, California 90017
Phone:   213-368-5000
Fax:       213-368-5009

Attorneys for Plaintiff
Santa Fe Employes Hospital
Association – Coast Lines

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

| | |
|---|---|
| SANTA FE EMPLOYES HOSPITAL ASSOCIATION – COAST LINES, a California non-profit corporation, LARRY D. PHILIPPI, an individual,<br><br>        Plaintiffs,<br><br>        vs.<br><br>CECIL DAVIS, an individual, and DOES 1-10, inclusive,<br><br>        Defendants. | Case No.:<br><br>**COMPLAINT FOR BREACH OF FIDUCIARY DUTY; CONVERSION; FRAUDULENT MISREPRESENTATION AND NON-DISCLOSURE; CONVERSIO** |

COMES NOW, Plaintiffs SANTA FE EMPLOYES HOSPITAL ASSOCIATION – COAST LINES ("SFEHA") and LARRY D. PHILIPPI, and, as and for their complaint herein, complain and allege as follows:

## I.

## THE PARTIES, JURISDICTION, AND VENUE

1.      This Court has jurisdiction over this civil proceeding pursuant to 29 U.S.C. §1132(e) and (f).

2.     Plaintiff SANTA FE EMPLOYES HOSPITAL ASSOCIATION – COAST LINES ("SFEHA") is a not-for-profit organized under and existing pursuant to the laws of the State of California and having its principal place of business in the State of California. SFEHA is an Employee Welfare Benefit Program for purposes of the Employee Retirement Income Security Act of. 1974 ("ERISA").

3.     Plaintiff Larry D. Philippi ("Philippi") is the Chief Executive Officer and Chairman of the Board of Trustees of SFEHA. He is bringing this action in his capacity as an officer and member of the Board of Trustees of SFEHA and not in his individual capacity. He is a resident of the Central District of California.

4.     Defendant CECIL DAVIS ("Davis") is the former Chief Executive Officer and Chairman of the Board of Trustees of SFEHA. He is a resident of the Central District of California.

5.      The true names and capacities of DOES 1 through 10 are unknown to Plaintiffs, who therefore sues these defendants by such fictitious names.  Plaintiffs will seek leave to amend this Complaint to allege such names and capacities as soon as they are ascertained.  Plaintiffs are informed and believes and thereon alleges that, each of the fictitiously named defendants are in some manner responsible, liable, and/or obligated to Plaintiff in connection with the acts alleged herein.

6.     Plaintiffs are informed and believe, and thereon allege that, at all times relevant herein, defendants Davis and Does 1 through 10 were the agent and/or employee of each of the remaining Defendants, and in doing the things hereinafter alleged, were acting both on their own behalf and within the course and scope of such agency and employment, and with the knowledge, ratification and/or approval of each of their respective principals.

7.     Venue for this action is appropriate in the Central District of California pursuant to 29 U.S.C. §1132(e)(2) because it is where the SFEHA has its principal place of business, where plaintiff Philippi and defendant Davis reside, and where the events that are the subject of matter of the within action occurred.

## II.

## ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF

8.      Plaintiffs refer to the allegations set forth in paragraph 1 through 6 hereof and incorporate said allegations herein as if fully set forth hereat.

9.      At all times relevant until June 7, 2021, Davis served as the Chief Executive Officer and Chairman of the Board of SFEHA. Also, from July 1, 2010 until June 7, 2021, Davis served as its Business/Office Manager.

10.     The by-laws of the SFEHA in pertinent part provide: "Members of said Board will receive from the Association such compensation as the Board of Trustees shall determine from time to time, and actual and necessary traveling expenses for attending Meetings on behalf of the Association or working for the Association and authorized by the Chairman." (Article II, section VII). They further provide: "At the annual Meeting, the Board of Trustees shall appoint and fix the salary (if any) of the Appointed Officers save those fees necessary for operation of the Association and meetings of the Board of Trustees."

11.      In an unsigned February 24, 2011 letter, Mr. Davis, in his capacity as "Chairman/Chief Executive Officer," instructed Yvonne Bagaman, the longtime SFEHA claims manager (but who in the email is erroneously described as working in "Payroll and Accounting"), to add him to the payroll with a "rate of pay" which would be "10 days per pay period based on the current daily allowance." The reference to "current daily allowance" is a reference to the per diem payments that the Board of Trustees had authored and that the individual board members had been receiving. Up to that point, the board members, including Mr. Davis, were paid a per diem based on the number of days actually in the SFEHA offices or attending Board meetings if held elsewhere. Since September, 2008, and down to the present, the per diem for Board members has been $300. It has not been broken down into a commitment of hours since some Board members travel significant distances to Board meetings and travel time is included in the $300 (with travel expenses being separately reimbursed). In short, if a Board member spends any portion of a day at the SFEHA offices or at some other location selected for a Board of Trustees meeting, he is paid $300.

12.     In his February 24 letter, Mr. Davis was effectively saying that he should be paid $300

for every day in a pay period for SFEHA employees, regardless of how many days and how many hours in a day he himself worked or was physically present at the SFEHA offices. Up to that point he had been paid the per diem for the days that he was physically present in the offices. At all times thereafter relevant, Davis was on average physically present in the office two half days per week when he was in California. On average he was in California three out of every four weeks, spending the rest of his time at a home he owned in Hawaii or vacating elsewhere. Plaintiffs are informed and believe, and on that basis allege that, in his capacity as Business/Office Manager of SFEHA, Davis rarely, if ever, worked when he was not in the SFEHA offices.

13.     Mr. Davis' February 24 letter references "discussions held with Board members on this subject" and claims that his letter was copied to "Board of Trustees." In fact, there had been no "discussions held with Board members" prior to the February 24 letter, or any time prior to June, 2021, regarding Mr. Davis receiving a salary in any amount, or any compensation in excess of the $300 per diem for days actually spent at the SFEHA offices, and the February 24 letter was not copied to any member of the Board of Trustees nor were its contents known to them prior to June, 2021.

14.     Effective March 1, 2011, Mr. Davis began to receive a regular paycheck and at the end of the year he received a W-II. With occasional short interruptions, he continued to receive salary paychecks through the first five months of 2021. From March, 2011 through the first five months of 2021, a period of ten years and three months, Mr. Davis received $929,810 in salary for an average annual compensation of $90,713. In two years (2017 and 2018), he was paid $112,320. This compensation was higher than Davis would have received had he been paid salary equal to the $300 per diem for every day that one or more SFEHA employees worked at the SFEHA offices over the course of the year. These adjustments to his compensation were unilateral, arbitrary, and secret. At no time was the Board of Trustees aware of these changes to Davis' compensation and, at all times prior to the beginning of June, 2021, the members of the Board, including plaintiff Philippi, believed that Davis was being paid no more than $300 per each day that Davis was physically at the SFEHA offices.

15.     The Board minutes for the meetings on October 19, 2010 and April 19, 2011, make no mention of Mr. Davis going on payroll or any other change to his compensation or expense reimbursement. Indeed, until the meeting held on June 7, 2021, no Minutes for any meeting, which in most instances consist of a certified transcript of everything that was said, make any mention of Mr. Davis being on payroll or anything having to do with his compensation or expense reimbursement, expect as regards a Rabbi Trust, a subject to be discussed below.

16.     The financial statements provided to the Board members had no separate line item for Davis' salary or other detail from which the members could have ascertained that Davis was receiving a salary and compensation far in excess of what they believed he was receiving and would have ever authorized.

17.     The salary that Davis caused himself to be paid by SFEHA was far in excess of the reasonable value of the services he was providing it both in his capacity as CEO/Chairman of the Board and Business/Office Manager. In fact, although he continued to provide overall strategic direction to SFEHA in the former capacity, he performed few of the functions of the latter position.

18.     Over the course of his employment with SFEHA there were occasional, arbitrary interruptions in the payment of his salary lasting several weeks and lasting as long as to two months. These interruptions were a function of issues concerning a Veterans Administration Individual Unemployability ("V.A.I.U.) benefit he received, and had nothing to do with a greater or lesser availability on his part to work. He would just occasionally tell the staff to cut off his compensation for several weeks. Plaintiffs are informed and believe, and on that basis allege, that Davis represented to the V.A. and caused SFEHA to represent to the V.A. through letters drafted by him but sent out under the name of other SFEHA employees, that he was suffering interruptions in his ability to work due to health issues which threatened to render him incapable of working for the foreseeable future, whereas in fact the interruptions were arbitrary and unrelated to developments regarding his health. Plaintiffs are further informed and believe that he represented to the V.A., and caused SFEHA to represent to the V.A. through letters and other documents purportedly signed by SFEHA employees, that he was employed and being compensated by the SFEHA as a part-time "consultant," working no

more than half-time rather than as a full-time Business/Office manager, as he had caused the SFEHA to make the basis for his compensation.

19.     The undisclosed and exorbitant salary Mr. Davis was taking was supplemented by undisclosed and unearned pension benefits he caused the Association to pay him.  At a Board meeting held on May 7, 2013, the Board authorized contributions of deferred compensation for Mr. Davis to a so-called Rabbi Trust which had previously been established to receive and invest deferred compensation for two other employees. The Board resolution did not specify the amount that could be deferred. It just approved the general proposition that Mr. Davis could defer a portion of his income going forward and put it into the trust as was being done for the other two employees. In explaining his request for this accommodation, Davis explicitly gave as his rationale that he needed to show no income for two months out of the year, a reference to his V.A.I.U. benefit. According to this rationale, he was seeking to use the Rabbi Trust to obtain on a deferred basis income that he was representing to the V.A. he was not receiving at all.

20.     The Board resolution with respect to the Rabbi Trust was necessarily an authorization of a deferral of Mr. Davis' prospective compensation from SFEHA since a system for deferring his income had not previously existed and all such income, whether authorized and earned or unauthorized and unearned, had already been paid. However, this is not how he implemented it. Rather, without even trying to relate the SFEHA contribution to the Rabbi trust to his account to salary he had received at any point in time, he called Wells Fargo Bank, the bank that held SFEHA's invested funds, and instructed it to take $60,000 out of the funds and immediately put it into the Rabbi Trust for his account. In April 2014, he caused a further $15,000 to be paid to the trust to his account. In fact, there is no evidence of any money being withheld from his salary or other compensation for the years 2010 to 2021for any purpose and, based on the actual compensation he was paid, contributions of $75,000 for the years 2010 through 2014 would have been substantially in excess of what could have been deferred on a tax-free basis. In essence, on the pretext that the May, 2013 Board of Trustees resolution had somehow authorized him to do it, Davis simply used his authority over the bank account to cause SFEHA to transfer $75,000 to the Rabbi Trust to his account

without reference to any tax-free deferral of income that had occurred or could then have been occurring.

21.     When Davis resigned on June 7, 2021 he immediately withdrew $126,359.70 from the Rabbi Trust representing what he claimed was the entirety of the balance of his account, inclusive of earnings on the original contributions.

22.     In the period from January 2014 through May, 2021, Davis charged $25,835.30 for non-travel-related personal expenses on the credit card of SFEHA which he has never reimbursed. He charged another $41,398 in unreimbursed travel-related expenses on this credit card. He further caused SFEHA to pay for the years 2015 through 2021 personal cable television expenses totaling $14,377.65. Lastly, a failure to bill Davis' wife, Karen Miller, for her SFEHA membership during this period, occasioned $17,160 in lost revenue.

23.     The total losses to SFEHA as a consequence of the foregoing have been in the minimum sum of $850,000.

**III.**

**FIRST CLAIM FOR RELIEF**

**(29 U.S.C. §1106(b)(1)) (By Plaintiff Larry D. Philippi**

**Against Defendant Cecil Davis and Does 1 through 10)**

24.     Plaintiffs refer to the allegations set forth in paragraph 1 through 19 hereof and incorporates said allegations herein as if fully set forth hereat.

25.     Plaintiff Larry D. Philippi is a fiduciary of SFEHA and is suing herein on its behalf.

26.     Defendant Davis, as a member of the Board of Trustees of SFEHA, and in his capacities as the Chairman of said Board of Trustees and the Chief Executive Officer of SFEHA, was a "fiduciary" of SFEHA within the meaning of 29 U.S.C. §1002(21)(A).

27.     Defendant Davis dealt with the assets of SFEHA, a welfare benefit plan under ERISA, "for his own interests," and for "his own account" in the following respects:

(a) He caused SFEHA to pay him a salary (1) which was not authorized by the SFEHA Board of Trustees, whom he knew to be ignorant of his actions; and (2) which far exceeded the value of the services he provided.

(b) He disbursed $75,000 of SFEHA funds to himself (1) which was not authorized by the SFEHA Board of Directors; and (2) for which he provided no consideration.

(c) He caused SFEHA to pay his personal expenses.

(d) He caused SFEHA to make false representations to the Veterans Administration on his behalf in order to defraud the Veterans Administration into paying him an Individual Unemployability benefit.

(e) He failed to disclose the aforesaid actions to the Board of Trustees of SFEHA, although he knew or could reasonably infer that no member of the Board was aware of them.

28.     The members of the Board of Trustees of SFEHA, including plaintiff Philippi, did not become aware of said afore-described acts and omissions until June, 2021. At all times prior thereto Davis could have apprised them of his acts and omissions but, with an intent to deceive them, he did not do so. The members of the Board could not reasonably have become aware of Davis' afore-described wrongful acts and omissions in the absence of Davis disclosing them.

29.     Defendant Davis is equitably estopped from claiming that the Statute of Limitations limits his liability for his breaches of fiduciary duty because, in his capacity as Chairman of the SFEHA Board of Trustees, he had an ongoing duty to disclose the transactions he had conducted and was conducting with SFEHA and, knowing that the members of the Board of Trustees were ignorant of the transactions, and with the intent of deceiving them with regard thereto, he failed to make any such disclosures.

30.     Plaintiff is informed and believes, and on that basis alleges, that defendants Does 1 through 10 aided, abetted, and/or benefited from Davis's wrongful acts and omissions, in full knowledge that he was breaching his fiduciary duties to SFEHA.

31.     As a consequence of defendant Davis' wrongful acts and omissions, as afore-described, in violation of 29 U.S.C. 1106(b)(1), SFEHA has been damaged in an amount according to proof.

32.     SFEHA is entitled to a judgment in an amount according to proof and an award of attorneys' fees to compensate it for the cost of bringing the within action.

## IV.

## SECOND CLAIM FOR RELIEF

### (Breach of Fiduciary Duty Under California Law)

### (Plaintiff SFEHA Against Defendants Davis and Does 1 through 10)

33.     Plaintiff refers to the allegations set forth in paragraph 1 through 19 hereof and incorporates said allegations herein as if fully set forth hereat.

34.     As a director and officer of SFEHA, a non-profit corporation operating a welfare benefit plan for the benefit of its plan participants, defendant Davis owed a fiduciary duty of undivided loyalty and the utmost good faith to SFEHA and, in particular, a duty to refrain from acts and omissions intended to unfairly benefit him to the detriment of SFEHA.

35.     Defendant Davis violated that duty in the following respects:

(a)     He caused SFEHA to pay him a salary (1) which was not authorized by the SFEHA Board of Trustees, whom he knew to be ignorant of his actions; and (2) which far exceeded the value of the services he provided.

(b)     He disbursed $75,000 of SFEHA funds to himself (1) which was not authorized by the SFEHA Board of Directors; and (2) for which he provided no consideration.

(c)     He caused SFEHA to pay his personal expenses.

(d)     He caused SFEHA to make false representations to the Veterans Administration on his behalf in order to defraud the Veterans Administration into paying him an Individual Unemployability benefit.

36.     Plaintiff is informed and believes, and on that basis alleges, that defendants Does 1 through 10 aided, abetted, and/or benefited from Davis's wrongful acts and omissions, in full knowledge that he was violating his fiduciary duties to SFEHA,

37.     Defendant Davis is equitably estopped from claiming that the Statute of Limitations limits his liability for his breach of fiduciary duty because, in his capacity as Chairman of the SFEHA Board of Trustees, he had an ongoing duty to disclose the transactions he had conducted and was conducting with SFEHA and, knowing that the members of the Board of Trustees were ignorant of the transactions and with the intent of deceiving them with regard thereto, he failed to make any

disclosures of what he had been doing.

38.     As a consequence of defendant Davis' breaches of fiduciary duty, SFEHA has been damaged in an amount according to proof.

39.     SFEHA is entitled to a judgment against defendants, and each of them, in an amount according to proof.

## V.

## THIRD CLAIM FOR RELIEF

### (By Plaintiff SFEHA Against Defendant Cecil Davis and Does 1 through 10 For Fraudulent Non-Disclosure)

40.     Plaintiffs refer to the allegations set forth in paragraph 1 through 19 hereof and incorporates said allegations herein as if fully set forth hereat.

41.     Defendant Davis, as the Chairman of the Board of Trustees and Chief Executive Officer of SFEHA, as well as in his capacity as its ostensible Business/Office manager, had a duty to disclose to the Board of Trustees any and all transactions he himself was proposing to conduct and was conducting for his own benefit with SFEHA and any and all actions he was taking in his official capacity that benefited him to the potential detriment of SFEHA.

42.     Defendant Davis, knowing that the Board of Trustees did not know of his transactions with SFEHA, and with the intent to deceive the Board of Trustees of SFEHA, failed to disclose to the Board the following:

(a)     He had caused SFEHA to pay him an authorized and unearned salary.

(b)     He had secretly disbursed $75,000 of SFEHA funds to himself for no consideration to SFEHA.

(c)     He had caused SFEHA to pay his personal expenses.

(d)     He had caused SFEHA to make false representations to the Veterans Administration on his behalf in order to defraud the Veterans Administration into paying him an Individual Unemployability benefit.

43.     Plaintiff is informed and believes, and on that basis alleges, that defendants Does 1 through 10 aided, abetted, and/or benefited from Davis's intentional non-disclosures, in full

knowledge that he was intending to deceive the Board of Trustees of SFEHA,

44.     The Board of Trustees of SFEHA did not become aware of the afore-described acts, omissions, and non-disclosures of defendant Davis until June, 2021.

45.     The SFEHA Board of Trustees justifiably relied on Davis' non-disclosures in failing to take action to prevent or retroactively rectify his afore-described wrongful acts.

46.     Plaintiff is informed and believes, and on that basis alleges, that defendants Does 1 through 10 aided, abetted, and/or benefited from Davis's wrongful acts and omissions, in full knowledge that he was guilty of fraudulent non-disclosure to the Board of Trustees of SFEHA.

47.     Defendant Davis is equitably estopped from claiming that the Statute of Limitations limits his liability for his breach of fiduciary duty because, in his capacity as Chairman of the SFEHA Board of Trustees, he had an ongoing duty to disclose the transactions he had conducted and was conducting with SFEHA and, knowing that the members of the Board of Trustees were ignorant of the afore-described transactions, and with the intent of deceiving them with regard thereto, he failed to make any disclosures of what he had been doing.

48.     As a consequence of defendant Davis' breaches of fiduciary duty, SFEHA has been damaged in an amount according to proof.

49.     SFEHA is entitled to a judgment against defendants, and each of them, in an amount according to proof.

50.     In fraudulently omitting to make the afore-described disclosures, Davis and Does 1 through 10 acted willfully, fraudulently, and maliciously and, as a consequence thereof, SFEHA is entitled to an award of exemplary and punitive damages against each of them in an amount according to proof.

## VI.

## FOURTH CLAIM FOR RELIEF

### (By SFEHA For Conversion Against Defendants Davis and Does 1 through 10)

51.     Plaintiffs refer to the allegations set forth in paragraph 1 through 19 hereof and incorporates said allegations herein as if fully set forth hereat.

52.     In causing SFEHA to pay him an unauthorized and unearned salary, in causing it to

pay him the secret sum of $75,000 for no consideration, and in causing it to pay his personal expenses, Davis embezzled the funds of SFEHA, seizing them for his own use and enjoyment.

53.     Davis' embezzlement of the funds of SFEHA was intentional and done in the knowledge that he would deprive SFEHA of the funds in question.

54.     Defendant Davis is equitably estopped from claiming that the Statute of Limitations limits his liability for conversion because, in his capacity as Chairman of the SFEHA Board of Trustees, he had an ongoing duty to disclose the transactions he had conducted and was conducting with SFEHA and, knowing that the members of the Board of Trustees were ignorant of the transactions and with the intent of deceiving them with regard thereto, he failed to make any disclosures of what he had been doing.

55.     As a consequence of defendant Davis' breaches of fiduciary duty, SFEHA has been damaged in an amount according to proof.

56.     SFEHA is entitled to a judgment against defendants, and each of them, to compensate SFEHA for its damages in an amount according to proof.

57.     In converting the funds of SFEHA, Davis and Does 1 through 10 acted willfully, fraudulently, and maliciously and, as a consequence thereof, SFEHA is entitled to an award of punitive damages against each of them in an amount according to proof.

## VII.

## FIFTH CLAIM FOR RELIEF

### (By Plaintiff SFEHA Against Defendants Davis and Does 1 through 10 for Unjust Enrichment in Violation of Civil Code Section 2224)

58.     Plaintiff refers to the allegations set forth in paragraph 1 through 19 hereof and incorporates said allegations herein as if fully set forth hereat

59.     Defendant Davis and Does 1 through 10 have been unjustly enriched within the meaning of Civil Code section 2224 by the diversion of funds to themselves at the expense of SFEHA.

60.     SFEHA is entitled to a judgment awarding it damages against defendants, and each of them, in an amount equal to the unjust enrichment received by defendants according to proof.

61.     In unjustly enriching themselves at the expense of SFEHA, Davis and Does 1 through 10 acted willfully, fraudulently, and maliciously and, as a consequence thereof, SFEHA is entitled to an award of exemplary and punitive damages against each of them in an amount according to proof.

**VIII.**

**<u>SIXTH CLAIM FOR RELIEF</u>**

**<u>(By Plaintiff SFEHA Against Defendants Davis and Does 1 through 10 For Self-Dealing in</u>**

**<u>Violation of Corporations Code section 5233)</u>**

62.     Plaintiff refers to the allegations set forth in paragraph 1 through 19 hereof and incorporates said allegations herein as if fully set forth hereat.

63.     Defendant Davis and Does 1 through 10 are guilty of self-dealing within the meaning of Civil Code section 2224 as a consequence of ,  the diversion of funds to themselves at the expense of SFEHA, as afore-described.

64.     SFEHA is entitled to a judgment awarding it damages against defendants, and each of them, in an amount equal to the benefit received by defendants as a result of their self-dealing according to proof.

65.     In committing acts of self-dealing at the expense of SFEHA, Davis and Does 1 through 10 acted willfully, fraudulently, and maliciously and, as a consequence thereof, SFEHA is entitled to an award of exemplary and punitive damages against each of them in an amount according to proof.

**IX.**

**<u>PRAYER</u>**

**WHEREFORE**, Plaintiffs prays for judgment as follows:

**<u>ON THE FIRST CLAIM FOR RELIEF:</u>**

1.     For a judgment for damages according to proof but in the minimum sum of $850,000, and for an award of attorneys' fees.

**<u>ON THE SECOND CLAIM FOR RELIEF:</u>**

2.     For a judgment for damages according to proof but in the minimum sum of $850,000, and for an award of attorneys' fees.

**ON THIRD CLAIM FOR RELIEF**

3.    For a judgment for damages according to proof but in the minimum sum of $850,000, and for an award of exemplary and punitive damages according to proof.

**ON FOURTH CLAIM FOR RELIEF**

4.    For a judgment for damages according to proof but in the minimum sum of $850,000, and for an award of exemplary and punitive damages according to proof.

**ON FIFTH CLAIM FOR RELIEF**

5.    For a judgment for damages according to proof but in the minimum sum of $850,000, and for an award of exemplary and punitive damages according to proof.

**ON SIXTH CLAIM FOR RELIEF**

6.    For a judgment for damages according to proof but in the minimum sum of $850,000, and for an award of exemplary and punitive damages according to proof.

**ALL CLAIMS FOR RELIEF**

7.    For prejudgment interest;

8.    For costs of suit; and

9.    For such other relief as the Court deems just and proper.

Dated: May 31, 2021

DUMAS & KIM, APC

By: _James Dumas_

James A. Dumas,
Attorneys for Santa Fe Employes Hospital
Association – Coast Lines and Larry D. Philippi